## CHICOT COUNTY DRAINAGE DISTRICT *v.* BAXTER STATE BANK ET AL.

No. 122. Argued December 7, 1939.—Decided January 2, 1940.

*Messrs. E. L. McHaney, Jr.* and *S. Lasker Ehrman,* with whom *Mr. Grover T. Owens* was on the brief, for petitioner.

*Mr. G. W. Hendricks* for respondents,

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Respondents brought this suit in the United States District Court for the Western Division of the Eastern District of Arkansas to recover on fourteen bonds of $1,000 each, which had been issued in 1924 by the petitioner, Chicot County Drainage District, organized under statutes of Arkansas,[1] and had been in default since 1932.

In its answer, petitioner pleaded a decree of the same District Court in a proceeding instituted by petitioner to effect a plan of readjustment of its indebtedness under the Act of May 24, 1934,[2] providing for "Municipal-Debt Readjustments." The decree recited that a plan of readjustment had been accepted by the holders of more than two-thirds of the outstanding indebtedness

---

[1] Act No. 405, Extra. Sess., General Assembly of Arkansas, approved February 20, 1920, as amended by Act No. 432 of 1921, and General Drainage Law of Arkansas, approved May 27, 1909.

[2] 48 Stat. 798. Originally this provision was limited to two years but it was extended to January 1, 1940, by Act approved April 10, 1936, 49 Stat. 1198.

and was fair and equitable; that to consummate the plan and with the approval of the court petitioner had issued and sold new serial bonds to the Reconstruction Finance Corporation in the amount of $193,500 and that these new bonds were valid obligations; that, also with the approval of the court, the Reconstruction Finance Corporation had purchased outstanding obligations of petitioner to the amount of $705,087.06 which had been delivered in exchange for new bonds and canceled; that certain proceeds had been turned over to the clerk of the court and that the disbursing agent had filed his report showing that the Reconstruction Finance Corporation had purchased all the old bonds of petitioner other than the amount of $57,449.30. The decree provided for the application of the amount paid into court to the remaining old obligations of petitioner, that such obligations might be presented within one year, and that unless so presented they should be forever barred from participating in the plan of readjustment or in the fund paid into court. Except for the provision for such presentation, the decree canceled the old bonds and the holders were enjoined from thereafter asserting any claim thereon.

Petitioner pleaded this decree, which was entered in March, 1936, as *res judicata*. Respondents demurred to the answer. Thereupon the parties stipulated for trial without a jury.

The evidence showed respondents' ownership of the bonds in suit and that respondents had notice of the proceeding for debt readjustment. The record of that proceeding, including the final decree, was introduced. The District Court ruled in favor of respondents and the Circuit Court of Appeals affirmed. 103 F. 2d 847. The decision was placed upon the ground that the decree was void because, subsequent to its entry, this Court in a

proceeding relating to a municipal district in Texas had declared the statute under which the District Court had acted to be unconstitutional. *Ashton* v. *Cameron County District,* 298 U. S. 513. In view of the importance of the question we granted certiorari. October 9, 1939.

The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. *Norton* v. *Shelby County,* 118 U. S. 425, 442; *Chicago, I. & L. Ry. Co.* v. *Hackett,* 228 U. S. 559, 566. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified.[3] Without attempting

---

[3] See Field, "The Effect of an Unconstitutional Statute"; 42 Yale Law Journal 779; 45 Yale Law Journal 1533; 48 Harvard Law Review 1271; 25 Virginia Law Review 210.

to review the different classes of cases in which the consequences of a ruling against validity have been determined in relation to the particular circumstances of past transactions, we appropriately confine our consideration to the question of *res judicata* as it now comes before us.

*First.* Apart from the contention as to the effect of the later decision as to constitutionality, all the elements necessary to constitute the defense of *res judicata* are present. It appears that the proceedings in the District Court to bring about a plan of readjustment were conducted in complete conformity to the statute. The Circuit Court of Appeals observed that no question had been raised as to the regularity of the court's action. The answer in the present suit alleged that the plaintiffs (respondents here) had notice of the proceeding and were parties, and the evidence was to the same effect, showing compliance with the statute in that respect. As parties, these bondholders had full opportunity to present any objections to the proceeding, not only as to its regularity, or the fairness of the proposed plan of readjustment, or the propriety of the terms of the decree, but also as to the validity of the statute under which the proceeding was brought and the plan put into effect. Apparently no question of validity was raised and the cause proceeded to decree on the assumption by all parties and the court itself that the statute was valid. There was no attempt to review the decree. If the general principles governing the defense of *res judicata* are applicable, these bondholders, having the opportunity to raise the question of invalidity, were not the less bound by the decree because they failed to raise it. *Cromwell* v. *County of Sac*, 94 U. S. 351, 352; *Case* v. *Beauregard*, 101 U. S. 688, 692; *Baltimore Steamship Co.* v. *Phillips*, 274 U. S. 316, 319, 325; *Grubb* v. *Public Utilities Comm'n*, 281 U. S. 470, 479.

*Second.* The argument is pressed that the District Court was sitting as a court of bankruptcy, with the limited jurisdiction conferred by statute, and that, as the statute was later declared to be invalid, the District Court was without jurisdiction to entertain the proceeding and hence its decree is open to collateral attack. We think the argument untenable. The lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act. Their determinations of such 'questions, while open to direct review, may not be assailed collaterally.

In the early case of *M'Cormick* v. *Sullivant,* 10 Wheat. 192, where it was contended that the decree of the federal district court did not show that the parties to the proceedings were citizens of different States and hence that the suit was *coram non judice* and the decree void, this Court said: "But this reason proceeds upon an incorrect view of the character and jurisdiction of the inferior Courts of the United States. They are all of limited jurisdiction; but they are not, on that account, inferior Courts, in the technical sense of those words, whose judgments, taken alone, are to be disregarded. If the jurisdiction be not alleged in the proceedings, their judgments and decrees are erroneous, and may, upon a writ of error, or appeal, be reversed for that cause. But they are not absolute nullities." *Id.,* p. 199. See, also, *Skillern's Executors* v. *May's Executors,* 6 Cranch 267; *Des Moines Navigation Co.* v. *Iowa Homestead Co.,* 123 U. S. 552, 557, 559; *Dowell* v. *Applegate,* 152 U. S. 327, 340; *Evers* v. *Watson,* 156 U. S. 527, 533; *Cutler* v.

*Huston,* 158 U. S. 423, 430, 431. This rule applies equally to the decrees of the District Court sitting in bankruptcy, that is, purporting to act under a statute of Congress passed in the exercise of the bankruptcy power. The court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is *res judicata* in a collateral action. *Stoll* v. *Gottlieb,* 305 U. S. 165, 171, 172.

Whatever the contention as to jurisdiction may be, whether it is that the boundaries of a valid statute have been transgressed, or that the statute itself is invalid, the question of jurisdiction is still one for judicial determination. If the contention is one as to validity, the question is to be considered in the light of the standing of the party who seeks to raise the question and of its particular application. In the present instance it is suggested that the situation of petitioner, Chicot County Drainage District, is different from that of the municipal district before the court in the *Ashton* case. Petitioner contends that it is not a political subdivision of the State of Arkansas but an agent of the property owners within the District. See *Drainage District No. 7 of Poinsett County* v. *Hutchins,* 184 Ark. 521; 42 S. W. 2d 996.[4] We do not refer to that phase of the case as now determinative but merely as illustrating the sort of question which the District Court might have been called upon to resolve had the validity of the Act of Congress in the present application been raised. As the question of validity was one which had to be determined by a judicial decision, if determined at all, no reason appears why it should not be regarded as determinable by the District Court like any other question affecting its jurisdiction. There can be no doubt that if the question of the constitutionality. of the statute had actually been raised and decided by the District Court in the proceed-

[4] See *Drainage District No. 2* v. *Mercantile-Commerce Bank,* 69 F. 2d 138; *In re Drainage District No. 7,* 21 F. Supp. 798.

ing to effect a plan of debt readjustment in accordance with the statute, that determination would have been final save as it was open to direct review upon appeal. *Stoll* v. *Gottlieb, supra.*[5]

The remaining question is simply whether respondents, having failed to raise the question in the proceeding to which they were parties and in which they could have raised it and had it finally determined, were privileged to remain quiet and raise it in a subsequent suit. Such a view is contrary to the well-settled principle that *res judicata* may be pleaded as a bar, not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, "but also as respects any other available matter which might have been presented to that end." *Grubb* v. *Public Utilities Comm'n, supra; Cromwell* v. *County of Sac, supra.*

The judgment is reversed and the cause is remanded to the District Court with direction to dismiss the complaint.

*Reversed.*

---

[5] See, also, *Miller* v. *Tyler,* 58 N. Y. 477, 480; *Drinkard* v. *Oden,* 150 Ala. 475, 477, 478; 43 So. 578; *Pulaski Avenue,* 220 Pa. 276, 279, 280; 69 A. 749; *People* v. *Russel,* 283 Ill. 520, 524; 119 N. E. 617; *Beck* v. *State,* 196 Wis. 242, 250; 219 N. W. 197.