**UNITED STATES of America**

v.

**Herbert Kon MORGAN.**

**No. DCR6353.**

United States District Court
N. D. Mississippi,
Delta Division.

April 12, 1966.

of Criminal Procedure. In that motion defendant stated his belief that his general sentence was illegal under the holding in Benson v. United States, 332 F.2d 288 (5th Cir. 1964), but he disavowed any purpose to seek relief under that decision, under the erroneous belief that to do so he would have to concede the validity of his convictions. In denying leave to withdraw the pleas of guilty, United States v. Morgan, 39 F.R.D. 323 (N.D.Miss.1966), this court pointed out the error in defendant's understanding of Rule 35 and left open the legality vel non, of the general sentence. Defendant thereupon filed the present motion.

The government's reply consists of a motion to dismiss upon the ground that the *Benson* rule has no retrospective application, citing Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The government makes no point of any differences in Benson's sentence and that of the defendant here, Morgan, and it is apparent that if Benson v. United States, supra, does govern this case, Morgan's sentence is illegal, for in each case a general sentence was imposed upon convictions upon multiple counts and, although the general sentence was less than the aggregate of the maximum sentences permissible upon all counts, it exceeded the maximum permissible upon any one count.

Benson's general sentence was imposed prior to the imposition of Morgan's general sentence. Both judgments became final at a time when such sentences were not illegal. Granger v. United States, 275 F.2d 127 (5th Cir. 1960). Benson later moved to correct his sentence and the new principle was created, viz., Benson's general sentence, legal when imposed, was declared to be illegal. After the new principle was declared, Morgan moved to correct his general sentence. The sole question here is whether a sentence identical to the one declared illegal in Benson v. United States, supra, imposed through a judgment which became final prior to the decision in *Benson* at a time when such sentences were legal, may be corrected on a motion pursuant to

Herbert Kon Morgan, pro se.

H. M. Ray, U. S. Atty., and E. Grady Jolly, Asst. U. S. Atty., Oxford, Miss., for the United States.

CLAYTON, District Judge.

This cause is before the court on a motion to correct an illegal sentence pursuant to Rule 35, Federal Rules of Criminal Procedure. Defendant, Herbert Kon Morgan, was convicted on his pleas of guilty to a two-count information charging violations of 18 U.S.C. § 2115. The maximum sentence for such violations is a fine of not more than $1000 or imprisonment for not more than five years, or both. On 8 August, 1963, the court imposed a general sentence of eight years imprisonment on both counts. Approximately two years later, defendant filed a motion to withdraw the pleas of guilty pursuant to Rule 32(d), Federal Rules

Rule 35 filed after the decision in *Benson*.

■ A change in the law will be given effect while a case is on direct review. United States v. Schooner Peggy, 1 Cranch (U.S.) 103, 2 L.Ed. 49 (1801); Carpenter v. Wabash R. Co., 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940); Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941). When the change occurs after the questioned judgment becomes final the effect of the change upon a collateral attack on the judgment depends upon the circumstances, including the purpose of the new rule, the reliance placed upon the old, and the effect of a retrospective application of the new rule upon the administration of justice. Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); Linkletter v. Walker, supra. A motion to correct an illegal sentence is a direct, rather than a collateral, attack on the judgment. Nevertheless, the judgment which includes the sentence here attacked had become final and the issue presented by the motion was not pending either before this court or the court of appeals when the change in the law occurred. A comparison of the considerations upon which the first principle stated above is based with those which led to the formulation of the second is persuasive that the nature of the attack on the sentence—whether direct or collateral—is not controlling on the present issue. Rather, the application of the first principle or the second depends upon whether the judgment in question had become final prior to the change in the law. It thus becomes necessary to inquire into the circumstances of the change in the law here involved to determine whether it should be applied retrospectively.

■ The history and theory of retrospective application of changes in the law is outlined in Part I of Linkletter v. Walker, supra. It is there said that in appropriate cases where the interest of justice requires, the courts may, in creating a new rule, provide that it shall apply only prospectively. In determining whether the new rule should apply retrospectively as well, the prior history of the rule in question, its purpose and effect, and the effect of retrospective application in furthering or retarding that purpose, must be considered. The existence of the old rule is an operative fact and it may have consequences which cannot—or should not—be ignored. If retrospective application is not necessary in order to give effect to the purpose of the new rule; if reliance upon the old rule produced results which were deemed final and were acted on accordingly; and if the administration of justice would be unduly inhibited by retrospective application of the new rule, then it should be confined to present and prospective application and the earlier rule, although impliedly wrong, must be treated as an existing juridical fact so that intermediate cases finally decided under it are not to be disturbed. On the other hand, if the purpose of the new rule and the policy to be thereby implemented can be achieved only by retrospective application and if that purpose is sufficiently compelling to justify, on balance, the disruption which inevitably must follow the application of the new rule to decisions formerly deemed final, then the rule must be applied to past decisions as well as to those which must be rendered in the future.

The opinion in Benson v. United States, supra, suggests that the court did not intend the new rule to be retrospectively applied. After noting the prior cases which had permitted general sentences to stand, the court said, at 332 F.2d 290, the following:

The question is now before us whether a different conclusion should be reached. *In doing so we do not repudiate what has been decided previously.* We start with the universal recognition that the practice, while permissible, is unsatisfactory. (Emphasis added.)

The undesirable characteristics of general sentences which were then catalogued by the court fall into two categories—those which are undesirable from

the prisoner's point of view and those which are undesirable from the court's point of view as an administrative matter. The substance of the former was that a general sentence varied from the standard requiring that a criminal sentence should be plain and unequivocal and that the prisoner would thus be uncertain as to the exact nature of his punishment. The greater emphasis of the opinion, however, is on the latter category. The general sentence created "unnecessary and sometimes troublesome difficulties for Courts" and "for prison authorities in handling offenders." Courts on direct review were required to consider errors relating to every count. On a motion to vacate sentence under 28 U.S.C. § 2255, an error with respect to one count would affect the sentence imposed on all counts.

*Benson* plainly established a rule for sentencing courts for their future guidance, a function performed by the court of appeals in its role of supervising the operation of the district courts. General sentences, whether they exceed or are less than the maximum permissible on any one count, should thereafter not be imposed. The new rule was made necessary as a result of increasing burdens being placed on the courts:

> Of course, Courts cannot complain that added burdens are imposed. This is just more grist for the mill under our charge. But time, tempo of the times, and the ceaseless expansion of our population is proving to us and others that if the real ideal of justice under law is to be achieved, precious Judge and judicial time must be carefully husbanded and conserved. To squander efforts unnecessarily is more than an imposition on Judges. It carries the risk that the really meritorious case will be unintentionally slighted. (332 F.2d at 291–292.)

The principal purpose of the new rule was not to relieve the prisoner from the uncertainty inherent in the general sentence. No fundamental rights were affected. No convictions were put in doubt. The length of the period of confinement could remain unchanged. See footnote 10 of the opinion, 332 F.2d at 292. Instead, while elimination of that uncertainty would naturally follow, the real purpose of the new rule was to enhance the rights of all litigants, including prisoners, through elimination of a source of increasing judicial waste, thereby enabling the courts to avoid the unintentional slighting of more meritorious causes.

This court and others had relied on the prior rule which permitted general sentences. Unknown numbers of prisoners are presently incarcerated under general sentences imposed prior to the decision of Benson v. United States, supra. If these sentences were now to be held illegal and thus vulnerable to Rule 35 motions, no real, substantial benefit would be afforded to the prisoners. Re-sentencing solely for the purpose of clarification would accomplish that and no more, since the total confinement could, in the court's discretion, be made to remain unchanged. Actual loss of benefits might occur as the result of delays in mandatory release dates and parole eligibility. For the relatively small benefit of clarification, however, the courts would be faced with a substantial burden as a result of motions to correct sentence and the necessary re-sentencing—a result precisely contrary to the principal purpose of the rule announced in *Benson*. The administration of justice would not be advanced by such a result but instead would be seriously hampered.

■ In sum, the purpose of the rule announced in Benson v. United States, supra, would not be appreciably advanced by retrospective application of the rule, but in fact that purpose would be adversely affected. The public benefit, if any, to be achieved by such retrospective application does not adequately justify the disruption which would follow the application of the new rule to judgments formerly deemed to be final and valid, and the opinion which is the source of the new principle indicates that the court which created it did not intend that such disruption should be permitted. As a result, the general sentence imposed on the

defendant in this case prior to the rendition of the decision in Benson v. United States, supra, was not and is not illegal and therefore cannot be altered on his motion to correct sentence.

An order will be entered in accordance with the foregoing.