BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF NEW YORK and Frank Macchiarola, Chancellor of the City School District of the City of New York, Plaintiffs-Appellees,

v.

Shirley M. HUFSTEDLER, Secretary of the United States Department of Education, Herman R. Goldberg, Associate Commissioner, Equal Educational Opportunity Programs, United States Department of Education, and Roma Stewart, Director of the Office for Civil Rights, United States Department of Education, Defendants-Appellants.

No. 248, Docket 80–6050.

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1980.

Decided Feb. 4, 1981.

Gregg M. Mashberg, New York City (Allen G. Schwartz, Corp. Counsel, Joseph F. Bruno, Asst. Corp. Counsel, New York City, on brief), for plaintiffs-appellees.

Richard P. Caro, Asst. U. S. Atty., Brooklyn, N. Y. (Drew S. Days III, Asst. Atty. Gen., Washington, D. C., Edward R. Korman, U. S. Atty., E. D. New York, Brooklyn, N. Y., Jill Laurie Goodman, U. S. Dept. of Education, New York City, on brief), for defendants-appellants.

Before OAKES and MESKILL, Circuit Judges, and WERKER, District Judge.[*]

OAKES, Circuit Judge:

This appeal is yet another chapter in the litigation between the Board of Education of the City School District of New York City and what is now the Department of Education over the latter's declaration of the former's ineligibility for funds under the Emergency School Aid Act of 1972 (ESAA), 20 U.S.C. §§ 1601–1619 (current version at 20 U.S.C. §§ 3191–3207). In the *ESAA I* litigation, the Supreme Court, in affirming this court's affirmance of the district court, held that discriminatory impact rather than discriminatory intent is the standard by which ineligibility under ESAA is to be measured because to treat as ineligible only those applicants who intend to perpetuate racial isolation would defeat the stated objective of ESAA, which is to end *de facto* as well as *de jure* segregation.[1] The Supreme Court also held that a prima facie case of discriminatory impact may be made with a proper statistical study.[2] The *ESAA I* cases sustained the Department of Health, Education, and Welfare's (HEW's) denial of a Board of Education ESAA assistance application that related to a grant of some $3.5 million for the fiscal year 1977–1978. Before instituting the *ESAA I* litigation, the Board did apply, pursuant to 20 U.S.C. § 1605(d)(1) (current version at 20 U.S.C. § 3196(c)(1)), for a waiver of HEW's ineligibility determination. But the *ESAA I* litigation did not concern that application for a waiver, even though HEW had denied the application within approximately one month of the date the Board filed the *ESAA I* litigation.

HEW also denied the Board's initial application, and the Board's application for a

---

[*] Of the Southern District of New York, sitting by designation.

1. *Board of Educ. v. Harris*, 444 U.S. 130, 100 S.Ct. 363, 62 L.Ed.2d 275 (1979), *aff'g sub nom.* *Board of Educ. v. Califano*, 584 F.2d 576 (2d Cir. 1978), *aff'g* 77 Civ. 1928 (E.D.N.Y. Apr. 18, 1978) (*ESAA I*).

2. *Id.* at 151–52, 100 S.Ct. at 375.

waiver of ineligibility, for some $2.36 million in ESAA funds for the following fiscal year, 1978–1979. In connection with those denials, the Board filed the *ESAA II* litigation, in which the district court affirmed HEW's finding of ineligibility but subsequently remanded the waiver application to HEW.[3] The trial court's remand was affirmed by a two-to-one panel majority of this court, with a petition for rehearing en banc denied.[4] In *ESAA II* the panel majority of this court took the view that HEW's approval of a voluntary plan to remedy discrimination in the school district could be sufficient to warrant issuance of a waiver; this court rejected HEW's contention that its regulations forbade granting a waiver until the school district achieved the final teacher assignment goals in the remedial plan. Thus in *ESAA II* this court upheld the district court's requirement that HEW issue a waiver upon a demonstration that the applicant has ceased its disqualifying activity and has provided acceptable assurances that such conduct will not reoccur.[5] The court's remand to HEW for a redetermination of the waiver application in connection with the 1978–1979 ESAA funds is still pending.

Encouraged by its success in *ESAA II* on the waiver application question with respect to fiscal 1978–1979, the Board filed this litigation, *ESAA III*, seeking to overturn the denial of its application for a waiver of HEW's determination of ineligibility for fiscal year 1977–1978 funds—the ineligibility determination upheld in *ESAA I.* The United States District Court for the Eastern District of New York, Jack B. Weinstein, Judge, held for the Board of Education below, *Board of Education v. Harris*, 79 Civ. 3222 (E.D.N.Y. Feb. 21, 1980). Upon a trial on the merits under Federal Rule of Civil Procedure 65(a)(2), and upon the records in the earlier cases and in a related

case,[6] the district court granted the Board's application for a declaration that HEW's denial of the Board's 1977–1978 fiscal year waiver application was improper and inconsistent with the governing federal statute. The court then remanded the waiver application for *de novo* consideration consistent with *ESAA II*, and ordered that the original approximately $3.5 million earmarked for the school district for the 1977–1978 fiscal year be preserved and set aside, pending reconsideration of the Board's waiver application. We affirm.

## DISCUSSION

■■■ On appeal the Department of Education makes two points. The first one, and a very simple one it is, is that this court erroneously decided *ESAA II* or, to put it euphemistically, that HEW's denial of the Board's application for a waiver for the 1978–1979 funds was not inconsistent with the statute. The answer to this contention is as simple as the point made. A panel of this court is bound by a previous panel's opinion, until the decision is overruled en banc or by the Supreme Court. Although the author of this opinion dissented vehemently in *ESAA II*, he was unable to attract sufficient support from the active judges on the court of appeals for a rehearing en banc. Therefore, unless the Supreme Court grants certiorari and overturns *ESAA II*, that decision is the law of the circuit and we are bound to follow it. This does not mean that on remand, the Department of Education is bound by any factual determinations that it may make in the course of deciding the pending *ESAA II* remand concerning the Board's application for a waiver for the 1978–1979 fiscal year funds. After all, the application for a waiver for 1977–1978 was made before the parties entered into the voluntary Memo-

---

3. *Board of Educ. v. Califano*, 464 F.Supp. 1114 (E.D.N.Y.1979) (*ESAA II*).

4. *Board of Educ. v. Harris*, 622 F.2d 599 (2d Cir.), *rehearing en banc denied*, 622 F.2d 619 (2d Cir. 1979), *cert. denied*, —— U.S. ——, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981) (*ESAA II*).

5. *Id.* at 609–10.

6. The district court considered the record in the related case of *Caulfield v. Board of Educ.*, 486 F.Supp. 862 (E.D.N.Y.1979), which was later affirmed, 632 F.2d 999 (2d Cir. 1980).

randum of Understanding, which was the basis of the *ESAA II* litigation. But the principles of law stated by this court in *ESAA II* are binding, and under those principles neither the statute nor the regulations permit the denial of an application for a waiver on the ground that the effects of prior discrimination persist.[7] Thus as a matter of law, the district court properly remanded to the Department of Education the Board's application for a waiver for 1977–1978.

▪ The second contention of the Department of Education is that the present action is barred by the final judgment in *ESAA I*—in other words, that as a matter of res judicata, the judgment sustaining the denial of the Board's initial application for ESAA funds bars an action concerning the denial of the Board's subsequent application for a waiver of the ineligibility determination. The question is whether the Board is merely asserting "a new ground for recovery," *see Brown v. Felsen*, 442 U.S. 127, 133, 99 S.Ct. 2205, 2210, 60 L.Ed.2d 767 (1979). In this regard the Department of Education is correct that res judicata generally prevents litigation of "all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding," *id.* at 131, 99 S.Ct. at 2209 (citing *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940)). The Department of Education argues that because the Board could readily have asserted in the *ESAA I* litigation the claim that its application for a waiver was improperly denied, it cannot now make that assertion. The heart of the Department of Education's argument is the further contention that because *ESAA I* and this case involve the same funds, the claims for relief are necessarily the same.

In *Herendeen v. Champion International Corp.*, 525 F.2d 130 (2d Cir. 1975), this court held that even though the same parties or their privies had been involved in a prior suit, there was not in that second suit the

requisite identity of causes of action to call into play the doctrine of res judicata. We said in that diversity action that the proper criteria—most frequently cited by both this court and the New York courts—are

> whether a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action, whether the same evidence is necessary to maintain the second cause of action as was required in the first, and whether the essential facts and issues in the second were present in the first.

*Id.* at 133–34 (footnotes omitted). The fact that the new cause of action could have been joined with the cause of action asserted in the earlier case was not found to be determinative. *Id.* at 135.

▪ We think that the test outlined in *Herendeen* is applicable here. And applying that test to this case, we hold that res judicata does not bar litigation of HEW's denial of the Board's application for a waiver of ineligibility with respect to the 1977–1978 fiscal year funds. Congress has established two possible ways in which a school district can receive ESAA funds—by an initial application for the funds or by an application for a waiver of a denial of the initial application. *See* 20 U.S.C. § 1605(d)(1) (current version at 20 U.S.C. § 3196(c)(1)). In this case the Board is not seeking to redress the same injury that it sought to redress in *ESAA I*, which was the initial denial of the $3.5 million grant. Instead, the Board is seeking relief here from the denial of a waiver of that initial ineligibility determination. It is true that many of the same facts are in evidence in both cases, but the essence of *ESAA I* was the denial of the initial grant application, a denial based on a determination of ineligibility. The essence of the instant case, on the other hand, is the denial of the later-filed application for a waiver of ineligibility. A school district that is eligible for funds does not, of course, need a waiver; an applicant seeking a waiver concedes ineligi-

---

7. 622 F.2d at 612.

bility for purposes of the waiver application. In these cases the finding of ineligibility based on discrimination turned on factors such as the racial distribution of faculty among different schools in the district, *see ESAA I* litigation,[8] while the determination whether to grant a waiver, at least under the *ESAA II* case,[9] turns on factors such as the likelihood of faculty transfers meeting the goals set out in the Memorandum of Understanding and the good faith of the Board of Education in seeking to implement the remedial program embodied in that agreement.

The statutory scheme, as noted above, provides two distinct means of obtaining ESAA funds. As a matter of fair and equitable implementation of the law, it may be said that the sense of the statutory scheme is that a board of education should be permitted to litigate separately claims relating to denial of an initial application and claims relating to the denial of a waiver, *see* Restatement (Second) of Judgments § 61.2(1)(d) (Tent.Draft No. 5, 1978).

Judgment affirmed.