434 So.2d 229 (1983)
W.J. STALLWORTH
v.
Arthur HICKS, Jr.
81-861.
Supreme Court of Alabama.
May 13, 1983.
Rehearing Denied June 10, 1983.
David R. Donaldson of Gorham, Waldrep, Stewart & Kendrick, Birmingham, for appellant.
Joseph W. Adams, Birmingham, for appellee.
TORBERT, Chief Justice.
This is an action by Arthur Hicks, Jr., concerning property in Jefferson County owned by his wife Geneva Hicks prior to her death. Mr. Hicks and the deceased occupied the premises as a homestead at the time of her death.
Mrs. Hicks died intestate on May 13, 1975. She left surviving her Arthur Hicks, Jr., her husband; one brother, W.J. Stallworth (appellant herein); and the children of a deceased sister. Mr. and Mrs. Hicks had no children. Under the laws of intestate succession in effect on the date of Geneva Hicks's death, Code of Alabama 1940, Title 16, § 1(5) (Recomp.1958), the realty passed to the brother, W.J. Stallworth, and the children of the deceased sister.
Mr. Hicks, as the surviving spouse of Geneva Hicks, asked the trial court to declare that he was entitled, under the homestead laws of Alabama, as construed by this Court in Ransom v. Ransom, 401 So.2d 746 (Ala.1981), to fee simple ownership in the property. On motion for summary judgment by the plaintiff, the trial court stated in its order, "It is the opinion of this court that Ransom v. Ransom, supra, extended to widowers the right granted to widows under Title 7, Section 663 and that thus the plaintiff, Arthur Hicks, Jr. is entitled to the fee simple title to the property."
The question presented to this Court is whether it was erroneous to give retroactive application to the holding in Ransom where vested property rights would be divested thereby. We hold that it was error for the trial court to do so.
*230 The laws of intestate succession in effect at the date of decedent's death control the descent of real property. Mordecai v. Scott, 294 Ala. 626, 320 So.2d 642 (1975). Under that law, Code of Alabama 1940, Title 16, § 1(5) (Recomp.1958), the rights of the brother and the sister's children in the property accrued at the date of Mrs. Hicks's death. At that time the surviving husband had no rights under the homestead laws. See, Code of Alabama, 1940, Title 7, § 661, et seq. (Recomp.1958).
In Ransom, supra, this Court held that the homestead law was underinclusive, and extended its applicability to widowers. The plaintiff has asked this Court to give that holding retroactive effect. We decline to do so for two reasons: first, there is no constitutional requirement that we do so, and second, there are overwhelming public policy considerations which compel us to the opposite result.
In Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940), the United States Supreme Court stated:
"The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. Norton v. Shelby County, 118 U.S. 425, 442 [6 S.Ct. 1121, 1125, 30 L.Ed. 178]; Chicago, I. & L. Ry. Co. v. Hackett, 228 U.S. 559, 566 [33 S.Ct. 581, 584, 57 L.Ed. 966]. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified."
More recently, the United States Court of Appeals for the Fifth Circuit struck down a Louisiana law which allowed community property to be mortgaged by the husband without the wife's consent. The law was declared unconstitutional on the basis of the equal protection clause of the United States Constitution. However, the court refused to give its decision retroactive effect, stating:
"We apply our decision today prospectively only, because a holding of retroactive invalidity of article 2404 would create a substantial hardship with respect to property rights and obligations within the State of Louisiana.
"....
"... Since our decision could produce substantial inequitable results if applied retroactively, we avoid that `injustice or hardship' through a holding of non-retroactivity."
Kirchberg v. Feenstra, 609 F.2d 727, 735-6 (5th Cir.1979). Thus, where a statute is struck down as unconstitutional, there is no mandate that the holding be given retroactive application in every case.
We are also compelled to reach this result on the grounds of public policy. Among the policy considerations are, "[t]he quieting of litigation; the public peace and repose; respect for judicial administration of the law, and confidence in its reasonable certainty, stability and consistency." Bibb v. Bibb, 79 Ala. 437, 444 (1885).
We are of the opinion that this Court's holding in Ransom requires further examination. That is, it is clear, as stated therein, *231 "[t]hat the homestead act, which uses the operative word `widow,' is gender-based and beyond rational support as against a constitutional challenge." 401 So.2d at 748. However, we will not apply this determination retroactively to claims which arose under the homestead laws before Ransom was decided where property rights would be divested thereby. This result is required, so that parties who have justifiably and reasonably relied on the laws of this state, as previously interpreted by this Court, will not be defeated in their expectation.[1] See Jackson v. Fillmore, 367 So.2d 948 (Ala. 1979).
In Ransom we were not required to divest anyone of property rights acquired under the homestead law in effect at the time of decedent's death. In the case before us, appellant's rights in the property vested at the time of Mrs. Hicks's death. To divest parties of real property acquired under the laws of intestacy in effect at the time of the decedent's death would create a cloud on the title of a great many parcels of real property in this state. Since there is no constitutional requirement that our interpretation of the statute be applied retroactively, we hold that the trial court erred in giving retroactive application to Ransom, supra, thus divesting the appellant of property rights that vested at Geneva Hicks's death. The judgment of the trial court is reversed and the case is remanded.
REVERSED AND REMANDED.
MADDOX, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
JONES, J., concurs in the result.
FAULKNER and ADAMS, JJ., recused.
JONES, Justice (Concurring in the result).
While I concur in the result reached by the majority, the majority's focus upon divestiture of vested property rights to justify that result is misplaced. As the majority states, "Ransom requires further explanation."
The thrust of the majority opinion in the instant case is such that, had Ransom been differently posturedthat is, had the wife died and the husband brought suit challenging the constitutional validity of the homestead statutehe would have lost, because otherwise divestiture of the wife's heirs would have occurred. Certainly, this cannot be a correct reading of Ransom, for the Ransom Court did not single out the posture of the case as being determinative of the outcome. Rather, after holding the statute void on its face, the Court breathed life into the Act by extending homestead benefits to widowers through statutory construction, thereby removing the gender-based constitutional defect. The posture of the case was not determinative of the statute's constitutional validity.
This is not to say, however, that the posture would be unimportant under all circumstances. Rather, the prospective or retroactive effect accorded Ransom does not turn on the fortuity of the sex of the survivor, that is, the policy considerations inherent in deciding what effect to give Ransom remain the same regardless of who brought the initial challenge to the Act's validity.
What are those considerations and what result do they mandate? Whenever a court contemplates changing the law through judicial decision, it faces two opposing forces: 1) the need and propriety of declaring a law unconstitutional or of conforming the law to constitutional standards or to changes in society; and 2) the need for maintaining stability and certainty in the law. See Comment, Prospective Application of Judicial Decisions, 33 Ala.L.Rev. 463 (1982). When the need for change in the law, by statutory construction or otherwise, clearly outweighs the disadvantages accruing therefrom, the judicial decision instituting the change may be applied; 1) retroactively, governing conduct occurring both before *232 and after the decision, including the conduct of the parties before the court; 2) prospectively, not applicable to parties before the court, or to legal events involving others not challenging existing law before the effective date of the decision; or 3) quasi-prospectively, which is identical to 2 above, except that the ruling of the court is also made applicable to the parties then before the court.
The main justifications for quasi-prospective application have been stated:
"[F]irst, to make an announcement binding precedent rather than mere dictum;... and second, to reward successful appellants and thereby provide an incentive for litigants to challenge existing rules of law that are in need of reform.[FN]"
"[FN] See Jackson v. City of Florence, 294 Ala. 592, 599-600, 320 So.2d 68, 75 (1975) (quasi-prospective application `recognizes the efforts of the plaintiff initiating the action')." 33 Ala.L.Rev. at 474.
As a general rule, quasi-prospective application of judicial holdings finds its field of operation in situations where the holding extends, or creates, new protections and rights not before recognized. The Jackson Court, for example, contrary to previous holdings, interpreted a 1907 statute to permit prosecution of civil actions against a municipality. The quasi-prospective effect given the Miranda and Escobedo decisions by the United States Supreme Court, extending protections under the 5th and 6th Amendments, respectively, are other examples.[1]
Ordinarily, on the other hand, a decision holding a statute facially unconstitutional, thus void ab initio, should be applied retroactively. Only the strongest of public policy considerations can justify quasi-prospective application only of such holdings. Nonetheless, for the sake of stability, I find those compelling considerations here. The desirability (indeed, the necessity) of maintaining the status quo with respect to all those land titles resulting from interests already vested under the homestead statute far outweighs the disrupting effect upon such titles that would otherwise result.
Therefore, I agree with the majority's holding to the extent that the totality of the holding in Ransom should not be applied retroactively, thereby defeating the expectations of those who have "justifiably and reasonably relied on the laws of this state." 434 So.2d at 231. The quasi-prospective application of Ransom, a rule of pragmatism justified on grounds of public policy, however, must avoid the obvious unfairness inherent in rejecting any challenge pending at the effective date of the Ransom decision. In other words, the homestead statute, as construed in Ransom, should apply to: 1) all such controversies arising from legal incidents (i.e., the date of death of the one whose estate is involved) occurring subsequent to the effective date of Ransom;[2] and 2) all such controversies arising prior to Ransom, pending at Ransom's effective date, in which the same constitutional challenge was made. Otherwise, the outcome of a separate case, wherein a similar challenge was made, may hinge on the fortuity of how much time was required to decide that case.
To illustrate No. 2 above, assume, for example, that Plaintiff X in Year 1 commences a suit wherein Statute A is challenged as being unconstitutional. In Year 2, Plaintiff Y commences a suit wherein Statute A is challenged on the same ground. This Court decides Y's suit favorably to him in Year 3, stating that the decision is to be applied only to those actions commenced after the effective date of decision. In Year 4, this Court decides *233 Plaintiff X's case. Should X be prevented from prevailing on his identical challenge just because, fortuitously, Y's challenge, though commenced after X's, was decided first? The answer is self-evident.
As the majority opinion points out, the constitutional challenge in the instant case was made subsequent to this Court's release of Ransom. To be sure, Ransom was cited as the basis for the challenge. Because Mr. Hicks's controversy concerning the statute's application arose from legal incidents occurring before the Ransom decision (and before 1977), which expanded homestead rights, and because Mr. Hicks had no pending constitutional challenge to the statute's validity at Ransom's effective decision date, he should not prevail on his homestead claim.[3]
A final point of clarification concerning the effect accorded Ransom is in order. In Ransom, the challengers prevailed in getting the homestead statute declared unconstitutional, but failed in their effort to prevent the widow from taking homestead. At first blush, this posture appears to complicate the analysis regarding what effect to accord the Ransom decision, because, ordinarily, the successful challenger prevails on his underlying claim. Furthermore, the Legislature amended the homestead statute, effective October 31, 1977, using gender-neutral language, thereby eliminating, statutorily, the constitutional defect found in Ransom, where the husband's death occurred before the amendment. This statutory amendment eliminates constitutional challenges arising from homestead controversaries where the death of a spouse occurred after the amendment. See Craig v. Root, 247 Ala. 479, 25 So.2d 147 (1946) (estate created governed by statute in effect at intestate's death). When we speak of the effective date of Ransom as the date from which prospectivity applies, it must be remembered that the amended statute, in practical effect, pushes the line of demarcation back from 1981, the date of Ransom, to October 31, 1977, when the amendment cured the constitutional defect.
Although these complicating factors should be recognized, and do cause some concern, they are not of such overriding significance as to prevent Ransom from being accorded the same treatment, regarding retroactivity and prospectivity, as it otherwise should be accorded. Without regard to who prevailed in Ransom, the two separate aspects of the holding need to be treated differently: 1) The Court held the homestead statute facially invalid; and 2) the Court remedied the constitutional defect through judicial construction. If we apply the totality of the holding in Ransom quasi-prospectively only, we create the anomaly of permitting the wife to succeed on claims for homestead in all cases where her husband's death occurred before October 31, 1977, while dooming to failure the husband's claim in all similarly situated cases, thus perpetuating the identical unequal application of the statute which the Ransom Court condemned as unconstitutional.
To avoid this anomalous result, the holding in Ransom, establishing the statute's unconstitutionality, should be applied retroactively to those parties, including husbands and wives, who had no claim pending or adjudicated with respect to homestead rights accruing from the death of a spouse before Ransom. Stated differently, no heir or spouse should be able to claim under the original defective statute, having not done so before Ransom established its unconstitutionality. Because of the overriding interest in protecting titles to homestead properties vested before Ransom, however, the unconstitutionality determination should not be retroactively applied in any manner which would jeopardize title to homestead property already set aside and vested in any spouse, heir, or their heirs and assigns, when Ransom was decided.
*234 The judicial construction remedying the constitutional defect, on the other hand, should be applied only quasi-prospectively. In practical effect, however, because Ransom was decided in 1981, and because the statutory amendment became effective October 31, 1977, no field of operation exists for prospective application of Ransom.
Applying all of the foregoing principles to the case before us, I agree with the majority that Mr. Hicks cannot prevail. As previously stated, he neither had a pending claim challenging the constitutionality of the statute on the effective date of Ransom, nor can he take advantage, retroactively, of Ransom's holding of the statute's unconstitutionality.
NOTES
[1] See generally, Comment, Prospective Application of Judicial Decisions, 33 Ala.L.Rev. 463 (1982).
[1] While neither Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), nor Miranda v. State of Arizona, 384 U.S. 436, 437, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), addressed the prospectivity issue, the United States Supreme Court in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), expressly declared "that Escobedo and Miranda should not be applied retroactively." 384 U.S. at 732, 86 S.Ct. at 1780.
[2] As we shall see later, because of the 1977 amendment to the statute, this statement is true only in the abstract.
[3] While the term "homestead" is often used in the statutes and the case law to denote various interests (e.g., exemption against levy, life interests which vest upon death of spouse), the context in which the term is used herein is confined to the fee interest which vests in the surviving spouse upon an adjudication setting aside the homestead pursuant to Code 1975, § 6-10-101. See Mordecai v. Scott, 294 Ala. 626, 320 So.2d 642 (1975); see, also, 40 C.J.S. Homesteads § 239 (1944).