**PHI TECHNOLOGIES,**
**Plaintiff/Respondent,**

**v.**

**NEW ENGLAND SOUND &**
**COMMUNICATIONS, INC.,**
**Defendant/Movant.**

**Civ. A. No. MBD–85–360–Y.**

United States District Court,
D. Massachusetts.

Jan. 29, 1986.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

Pursuant to 28 U.S.C. § 1963, this Court, on May 16, 1985,[1] registered a default judgment obtained in the United States District Court for the Western District of Oklahoma by Phi Technologies, Inc. ("Phi Technologies"), an Oklahoma corporation with its principal place of business therein, against New England Sound and Communications, Inc. ("New England"), a Massachusetts corporation with its principal place of business in this Commonwealth. The

Court issued a writ of execution on May 21, 1985 and this writ was served on New England on May 28, seven days later. When New England failed for more than 30 days to satisfy the writ, Phi Technologies moved on July 24, 1985 for a trustee attachment of New England's goods, effects, or credits as entrusted to the Shawmut Worcester County Bank, Worcester, Massachusetts. On August 23, 1985, Phi moved for a trustee attachment of New England's goods, effects or credits as entrusted to the Guaranty Bank and Trust Co. of Westborough, Massachusetts. Both motions were allowed. Each trustee answered, however, that at the time of service there were no goods, effects, or credits of New England in its possession.

On September 19, 1985, New England filed a motion to vacate the Oklahoma default judgment, quash execution, and quash the trustee process attachment. In favor of these motions, New England asserts that the judgment by the court of rendition is flawed because that court lacked personal jurisdiction over New England under the Constitutional standard of due process and lacked subject matter jurisdiction because there was a failure to meet the statutory $10,000 amount set forth by 28 U.S.C. § 1332. New England further asserts lack of personal jurisdiction because of insufficient service of process. Finally, New England further contends that it is entitled to relief pursuant to Fed. R.Civ.P. 60(b)(6) for "any other reason justifying relief from the operation of the judgment." Opposing these various motions, Phi Technologies has filed a cross motion for sanctions under Fed.R.Civ.P. 11 and for other suitable relief.

For the reasons set forth below, the Court denies New England's motions to vacate the default judgment, to quash execution, and to quash the trustee process attachment. The Court also denies Phi Technologies' motion for sanctions.

1. This is the date from the Docket Sheet. Phi Technologies, Inc. uses the date of May 15, 1985

in its Memorandum. This difference is not a material one.

## I. New England's Motions to Vacate and to Quash

■ A judgment in the action for the recovery of money or property entered in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district by filing there a certified copy of such judgment. 28 U.S.C. § 1963. Phi Technologies correctly registered the judgment of the United States District Court for the Western District of Oklahoma with this Court. Nonetheless, the motion to vacate is properly before this Court. *Indian Head National Bank of Nashua v. Brunelle*, 689 F.2d 245, 250–251 (1st Cir.1982) (discussing cases where courts have examined foreign judgments when faced with a collateral challenge based on allegations of lack of personal jurisdiction). In support of this motion, New England asserts that the Oklahoma default judgment is void because of "improper service of summons and complaint" and because "the forum court did not have personal jurisdiction over the defendant and this cause of action." Both assertions lack merit.

### A. Improper Service

■ The complaint and summons in the original case in Oklahoma were served by certified mail, return receipt requested. The return receipt evidences the addressee as one Gerald K. Anderson ("Anderson"), President of New England. The receipt also bears the designation "Restricted Delivery." The return receipt was signed in box number five ("Signature-Addressee") and dated December 18, 1984 in box number six ("Signature-Agent"). The receipt also bears a Northborough, Massachusetts postmark with "December 18, 1984" in the middle of the postmark. The signature on the return receipt has not been identified, but it is apparently not that of New England's President, Anderson.

Anderson submitted two affidavits in support of the instant motions. Nowhere in those affidavits did he deny knowledge of the complaint and summons served on December 18, 1984. Nor did he aver that the signature in box number five of the return receipt was that of an unauthorized individual.[2] In paragraph five of his second affidavit Anderson states:

> 5. I do not recall receiving proper service by certified mail in the above entitled action and I do not recall signing a return receipt card relative to said service of summons and complaint. Anderson, Second Affidavit; filed September 24, 1985.

In challenging the propriety of service, New England relies exclusively on Fed.R. Civ.P. 4(d)(3) which requires service "By delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." New England ignores Fed.R.Civ.P. 4(c)(2)(C)(i) which permits service of the complaint and summons against New England "pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of the State...."

The applicable Oklahoma statute, 12 O.S. Supp.1984, § 2004(C), (E), (F), the "new" Oklahoma Pleading Code, effective November 1, 1984 and dispositive of the issue for the instant action, authorizes service of process upon a foreign corporation by certified mail, return receipt requested, with delivery restricted to the addressee. 12 O.S.Supp.1984, § 2004(C)(2) and § 2004(D)(3).[3] In the instant case, the

---

**2.** In relevant part, the text of his affidavit states: "The defendant is not aware of who signed the return receipt card and as such received service. It *could* have been any employee of the company and not one entrusted to receive service." [Emphasis by the Court]. New England's Memorandum in Support of the Motion to Vacate at 5.

**3.** The Oklahoma Pleading Code provides that service by mail on, *inter alia,* foreign corporations may be accomplished by acceptance by

Court rules that the service of process was legally sufficient in that it met the requirements of applicable Oklahoma law and of Fed.R.Civ.P. 4(c)(2)(C)(i).

### B. Lack of Jurisdiction

█ New England argues that the forum Court lacked both subject matter jurisdiction and personal jurisdiction to issue a binding judgment. New England challenges subject matter jurisdiction based on the assertion that Phi Technologies lacked a good faith claim that the amount in controversy before the forum Court exceeded $10,000. 28 U.S.C. § 1332. A review of the record before the Court reveals no reason to doubt that Phi Technologies' claim for damages in excess of $10,000 was based on good faith. Indeed, the First Execution as filed with this Court notices a judgment against New England for $21,-859.95 including the judgment amount, prejudgment interest, and attorneys' fees.

New England challenges the personal jurisdiction of the forum Court on two bases: that it fails the standard set by the Due Process clause of the Constitution and that it fails to meet the requirements of the state long-arm statute. The Constitutional standard is set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) and provides that a foreign corporation must have established "certain minimum contacts" with the forum so "that the maintenance of the suit [would] not offend 'traditional notions of fair play and substantial justice.'" Further, the foreign corporation must have "purposely avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,*

357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). *See also Yankee Metal Products Co. v. District Court of Oklahoma County,* 528 P.2d 311, 312 (Okla. 1974).

Both the United States Supreme Court and the Supreme Court for the State of Oklahoma apply a similar "minimum contacts" test when reviewing the application of "long arm" jurisdiction. In applying the "minimum contacts" test to non-resident purchasers-lessees like New England, this Court as well as the courts of Oklahoma distinguish between "active purchasers or lessees" and "passive purchasers or lessees." *Yankee Metal Products v. District Court of Oklahoma County,* 528 P.2d 311, at 312–313 (adopting the decision in *Vacu-Maid v. Covington,* 530 P.2d 137 [Okla. 1974] which, in turn, adopts the standard set by the First Circuit in *Whittaker Corporation v. United Aircraft Corporation,* 482 F.2d 1079, 1084–1085 [1st Cir.1973]). In sum, the courts of both jurisdictions agree that active purchasers or lessees are generally subject to long-arm jurisdiction while passive purchaser-lessees are not.[4]

The business relationship between Phi Technologies and New England is described in the affidavits before the Court. These affidavits reveal that the parties have had an on-going business relationship since September, 1982. Since that date, Phi Technologies has produced various products for New England, all of which were made according to New England's particular specifications. Phi Technologies sold some of these specified products to New England outright, while others were leased rather than sold.[5] The parties bar-

---

any officer or by any employee of the registered office or principal place of business who is authorized to accept service or who regularly receives certified mail. The statute also provides that default judgments such as this one may be set aside upon motion of the defendant if the defendant demonstrates to the Court that the return receipt was signed or delivery was refused by an unauthorized person. The defendant New England has failed to make any such demonstration to this Court and apparently also failed to make any such demonstration to the forum Court.

4. This distinction insulates a consumer, for example, who merely orders a stock item by "mail order catalogue" from a distant state. *Yankee Metal,* 528 P.2d at 313.

5. The lease agreement provided, *inter alia,* that it would be construed and interpreted according to the laws of Oklahoma and that it would not become effective until accepted by the lessor at its place of business in Oklahoma City, Oklahoma. Rental payments were payable to the lessor at its office. The only address listed for

gained over the terms of these transactions by mail and telephone. This bargaining spanned an extended period of time.

■ Determining whether a party is an "active purchaser-lessee" or a "passive purchaser-lessee" is made on a case-by-case basis. The record in this case gives every reason to conclude that New England was and is an "active purchaser-lessee" with sufficient minimum contacts under both the Due Process clause of the Constitution and the long-arm standard of the State of Oklahoma. Accordingly, this Court rules that the Oklahoma forum Court properly exercised that state's long-arm jurisdiction over New England. There is no reason to conclude otherwise.

### C. Other Reasons

■ In addition to the allegations above, New England requests relief from the default judgment pursuant to Fed.R.Civ.P. 60(b)(6) which permits this Court to relieve Phi Technologies from the existing judgment for "any other reason justifying relief...." New England fails to offer any reason that would justify such relief. Accordingly, the Court declines to grant it.

### II. Phi Technologies' Motion for Sanctions

■ Rule 11 of the Federal Rules of Civil Procedure states the applicable standard which provides in relevant part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after a reasonable inquiry it is well grounded in

fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

In raising the jurisdictional issue of the "active" versus the "passive" purchaser-lessee, New England brings before the Court a cognizable, non-frivolous issue. It is well-established that a defendant who defaults in an action in one jurisdiction may collaterally attack the default judgment when it is sued upon in a second jurisdiction on the basis of lack of personal jurisdiction under the Due Process Clause, *Insurance Corp. of Ireland, Ltd. v. Compagnaie des Bauxites de Guinee*, 456 U.S. 694, 706, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982); *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525, 51 S.Ct. 517, 517, 75 L.Ed. 1244 (1931), or on the basis of lack of subject matter jurisdiction under Article III and applicable statutes, *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S., at 702, 102 S.Ct. at 2104; *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1946), *reh'g denied* 309 U.S. 695, 60 S.Ct. 581, 84 L.Ed. 1035 (1940) (where the proposition is stated, although the parties were held to have waived any objection and were not permitted to attack the judgment collaterally).

A motion to vacate is an entirely proper method of collateral attack. Therefore, the Court is inclined to overlook Phi Technologies' demonstration that New England relied upon a repealed statute [6] in assessing whether Rule 11 sanctions are in order.

---

the lessor was 4605 N. Stiles, Oklahoma City, Oklahoma.

**6.** Phi Technologies emphasizes that New England cites to a repealed statute, 12 O.S.1981, § 187. This criticism is not technically correct. In fact, a detailed review of the statute in question reveals that it was not repealed but rather amended by the passage of the Oklahoma Pleading Code, 12 O.S.Supp.1984, approved May 1, 1984 and effective November 1, 1984. This is harmless misstatement, however, for the same detailed review demonstrates that § 187 as

amended was virtually obliterated by what the Oklahoma Session Laws of 1984 ch. 164 (S.B. No. 41) refer to as "strikeouts." Similarly, Phi Technologies calls the Court's attention to New England's reference to 12 O.S. § 1701.03. This section was repealed by Oklahoma Session Laws 1984, ch. 164 § 32, also effective as above. A tempest in the proverbial teapot, this quarrel does not change the Court's rulings on these motions. Oklahoma still has a long-arm statute, 12 O.S.Supp.1984, § 2004(F). Section (F) provides "ASSERTION OF JURISDICTION. A

The Court rules that New England rightfully raised a cognizable issue: whether it could be bound by the Oklahoma judgment. The fact that, after review, the issue is resolved against it does not warrant sanction.

### III. Conclusion

Its challenge raised—and denied for the reasons discussed above—New England must comply with the judgment of the District Court of Oklahoma. Accordingly New England's motion to vacate is DENIED. New England's motions to quash both execution of the prior judgment and the trustee attachment are likewise DENIED. Phi Technologies' motion for sanctions pursuant to Fed.R.Civ.P. 11 is DENIED.

So Ordered.

court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." Section (E)(2) states "When the exercise of jurisdiction is authorized by subsection F ... service of the summons and petition may be made outside this state: a. by personal delivery in the manner prescribed for service within this state, b. in the manner prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction, c. in the manner prescribed by paragraph 2 of subsection C of this section, d. as directed by the foreign authority in response to a letter rogatory, e. in the manner prescribed by paragraph 3 of subsection C of this section [with some limitations], and f. as directed by the court." The legal principle which underlies the application of either the old or the new version of the long-arm statute remains the same. Both are based on the standard of "minimum contacts" originally articulated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).