**In re FLEMING COMPANIES, INC., et al., Debtors.**

**Post–Confirmation Trust, Plaintiff,**

**v.**

**Wayne Berry, et al., Defendants.**

**Bankruptcy No. 03–10945 (MFW).**
**Adversary No. 10–53159 (MFW).**

United States Bankruptcy Court, D. Delaware.

Feb. 2, 2011.

Richard L. Wynne, Esquire, Erin N. Brady, Esquire, Jones Day, Los Angeles, CA, Laura Davis Jones, Esquire, Scotta E. McFarland, Esquire, James E. O'Neill,

III, Esquire, Pachulski, Stang, Ziehl & Jones LLP, Wilmington, DE, for the Post–Confirmation Trust.

Timothy J. Hogan, Esquire, Honolulu, HI, for the Defendant.

## MEMORANDUM OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion of Wayne Berry and his attorney Timothy Hogan (collectively the "Defendants") to dismiss or, in the alternative to sever and transfer venue of the Amended Complaint filed by the Post–Confirmation Trust (the "PCT"). For the reasons set forth below, the Court will deny the Motion.

## I. BACKGROUND

Fleming Companies, Inc. ("Fleming"), was one of the country's largest distributors of consumable goods, with operations throughout the continental United States and Hawaii. Fleming's Hawaii division began doing business with a company known as Atlantic Pacific International, Inc. ("API"), which managed Fleming's shipment of grocery products from the continental United States to Hawaii. Defendant, Wayne Berry ("Berry"), served as Vice President of API in 1996 and President in 1997. During this time, Berry wrote a computer program called "Freight Control Software" ("FCS"), which API used to track Fleming's purchase orders and shipments from the continental United States.

In the late 1990s, Fleming decided to terminate its relationship with API, causing API to cease operations. Once it was determined that Berry, not API, was the owner of FCS, Berry and Fleming entered into a free licensing agreement to allow Fleming to continue using FCS. Berry remained the owner of FCS. Within months, Berry began accusing Fleming of infringing his FCS copyrights. The accusations culminated in Berry with the assistance of his counsel and Co–Defendant, Timothy Hogan ("Hogan"), suing Fleming in the District Court of Hawaii. (D.I. Adv. # 1 at Ex. 16.) [2]

In this first case, Berry claimed infringement with statutory damages in excess of $3 billion. (Id.) After trial, on March 6, 2003, the jury ruled in favor of Fleming on all counts except one. (Id. at Ex. 17.) On the sole count in favor of Berry, the jury found that some of Fleming's changes to FCS were not authorized by the license Berry had provided to Fleming, and Berry was awarded statutory damages of $98,250.

In April 2003, Fleming and certain of its affiliates (collectively the "Debtors") filed for relief under chapter 11 of the Bankruptcy Code. In July 2003, the Debtors filed a motion for authority to sell substantially all of their wholesale distribution assets to C & S Wholesale Grocers, Inc. ("C & S").

Barry objected to the sale, arguing that the Debtors were planning to sell FCS to C & S without his consent. On August 15, 2003, the Court approved the sale to C & S, finding that the Debtors were not selling any of Berry's intellectual property to C & S. Despite approval of the sale, Berry filed an administrative claim in the bankruptcy case, seeking $48 million from

---

1. The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure.

2. Citations to exhibits attached to pleadings in the bankruptcy case are "D.I. # at Ex. [letter or number]." Citations to exhibits attached to pleadings in the adversary proceeding are "D.I. Adv. # at Ex. [letter or number]."

the Debtors for damages due to the alleged sale to C & S of his software, including FCS.

After the sale hearing, Berry filed a second suit in the Hawaii District Court against the Debtors, C & S, and multiple other defendants, claiming copyright infringement, vicarious copyright infringement, contributory copyright infringement, conspiracy to infringe, trade secret misappropriation, Sherman Act violations, and/or RICO violations. The District Court dismissed all of Berry's claims, except for one in which it found that two of the Debtors' employees had inadvertently used a derivative of FCS for a period of 70 days. (*Id.* at Ex. 23.) For this use, the jury awarded Barry $57,534. (*Id.* at Ex. 34.) Berry's request for an injunction was denied, because the District Court found that Berry had presented no evidence that C & S had any of his intellectual property on their computers. (*Id.* at Ex. 35.) In addition, the District Court awarded a total of $223,800.20 plus interest and costs of collection, to the Defendants for their costs and attorneys' fees.

Berry appealed the Hawaii District Court judgment. The Ninth Circuit rejected the appeal in its entirety. (*Id.* at Ex. 46.) Both the PCT and C & S were awarded costs and fees expended in defending the appeal.

In May 2004, the Debtors filed their Third Amended Plan of Reorganization. (D.I. # 7975.) Berry opposed the Plan because it did not provide for the payment of his $48 million administrative claim. On July 27, 2004, the Court overruled Berry's objection and confirmed the Plan, finding again that the sale to C & S did not include FCS. (D.I. # 9045.) The Court then estimated Berry's administrative claim at $100,000 based on the second jury award. At the conclusion of the confirmation hearing, the Court gave Berry permission to liquidate all of his claims against the Debtors in the District Court of Hawaii. Berry appealed both the Court's confirmation ruling and its $100,000 estimate of his administrative claim. Berry withdrew his appeal of the confirmation order and has subsequently stipulated to the dismissal of his appeal of the estimation order. (D.I. # 9291.)

Under the approved Plan, the Debtors rejected Berry's license agreement. Berry filed another administrative claim against the Debtors for more than $200 million in "rejection damages."

Pursuant to the confirmed Plan, the PCT was formed as a creditor's trust and was vested with certain assets and liabilities that the Debtors held as of the Plan's effective date.

In March 2007, Berry sued the Debtors' pre-petition lenders and DIP lenders, JP Morgan Chase Bank and Deutsche Bank (collectively the "Banks"), in the Hawaii District Court, claiming contributory copyright infringement, vicarious copyright infringement and unjust enrichment. (D.I. Adv. # 1 at Ex. 49.) The Banks filed a motion to dismiss Berry's complaint and Berry responded with a motion for summary judgment. After both motions were fully briefed, Berry informed the District Court that he had moved to Florida. As a result, the District Court suggested that a change of venue might be appropriate. The Banks filed a motion to transfer venue to the Southern District of New York.

In response, Berry filed a motion seeking the recusal of the presiding judge in the Hawaii District Court. In the motion, Berry alleged, inter alia, a conspiracy between the judge, a former client of the Debtors, the Banks, and Al–Qaeda. The Court denied the recusal motion and granted the motion to transfer venue to

the District Court for the Southern District of New York.

After the case was transferred, Berry filed a Second Amended Complaint on December 21, 2007, which added the PCT and other parties as defendants. All of the defendants in the New York case filed dispositive motions, with the Banks and C & S filing motions to dismiss and the PCT filing a motion for summary judgment. The District Court granted each dispositive motion and dismissed Berry's Second Amended Complaint in its entirety.

Berry, acting in pro per, appealed the decision to the Second Circuit on March 2, 2009. The District Court ordered Berry to post a $50,000 appellate bond to secure the defendants' costs and fees on appeal. When no bond was posted, the appellees filed a motion to enforce the bond and dismiss the appeal. Berry responded by filing a motion for an injunction against the defendants. Both motions were denied, but the Second Circuit ultimately affirmed the District Court's ruling in its entirety. (D.I. Adv. # 1 at Exs. 69 to 70.)

On August 13, 2009, Berry filed a motion in the bankruptcy court seeking the immediate payment of his claims, including a $2 million administrative claim. (D.I. # 13952.) The Court denied the motion, finding that the PCT's claims for outstanding attorneys' fees awarded against Berry outweighed any administrative claim Berry may have. (D.I. # 13977 at 33–34.)

In addition to the administrative claim, Berry also sought payment of an unsecured claim of approximately $200,000, based on the first jury award in Hawaii. (D.I. # 13952.) In response to Berry's claim, Berry's wife filed papers with the Court, claiming that the Hawaii Family Court had awarded her ownership of any copyright-related claim or judgment Berry may have against the Debtors. (D.I. # 13957.) Berry denied this. On September 2, 2009, the Court ordered Berry and his wife to return to the Hawaii Family Court for a determination of the ownership of the unsecured claim. (D.I. # 13977 at 10–11.) Two weeks after the Court's order, Berry filed a motion to set aside his divorce decree in the Hawaii Family Court.

In the interim, the PCT has resolved all other outstanding claims against the estate. (Compl. at ¶ 143.) It has also liquidated all remaining assets and claims of the estate. (*Id.*) The PCT has made several interim distributions to creditors and is ready to make a final distribution and close these cases. (*Id.*)

On October 27, 2010, the Hawaii Family Court held a hearing on ownership of Berry's claim, at the end of which it directed Berry and his wife to set up an escrow account for any potential recovery of the claim in the bankruptcy case. (D.I. Adv. # 55 at Ex. A.) The Hawaii Family Court stated that if there is any distribution on the claim, then the Court would make a determination on ownership between Berry and his wife. (*Id.*)

On September 28, 2010, the PCT filed this adversary proceeding against the Defendants. The PCT's Amended Complaint seeks an injunction against the Defendants under the All Writs Act, precluding them from filing any further suits against the Debtors or related entities without this Court's prior authorization and seeking equitable subordination of any claim Berry may have to a distribution in the Fleming bankruptcy case. On October 29, 2010, the PCT filed a Motion for Summary Judgment on its Amended Complaint. (D.I. Adv. # 25.) In response, the Defendants sought to withdraw Berry's remaining general unsecured claim. Simultaneously, the Defendants filed a Motion to Dismiss the PCT's Amended Complaint or in the alter-

native to sever and transfer venue of the case to the Hawaii District Court. (D.I. Adv. # 30.) Briefing on the Motion for Summary Judgment has been extended until a decision on the Motion to Dismiss. The Motion to Dismiss has been fully briefed and is ripe for decision.

## II. *JURISDICTION*

█ The Court has jurisdiction to determine whether it has subject matter jurisdiction over this adversary proceeding. *See, e.g., Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376–77, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute).

## III. *DISCUSSION*

The Defendants move for dismissal of the claims against them under Rule 12(b)(1), Rule 12(b)(6) and Rule 8(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rules 7009 and 7012(b) of the Federal Rules of Bankruptcy Procedure. In the alternative, the Defendants move to sever and transfer venue pursuant to 28 U.S.C. § 1404(a), made applicable by Rule 1014(a)(1) of the Federal Rules of Bankruptcy Procedure.

### A. *Rule 12(b)(1) Dismissal*
#### 1. *Standard of Review*

█ Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a federal court may dismiss a complaint for lack of subject matter jurisdiction. A motion to dismiss under Rule 12(b)(1) challenges the power of the federal court to hear a claim or case. *See, e.g., Democracy Rising PA v. Celluci*, 603 F.Supp.2d 780, 788 (M.D.Pa.2009). "If a court lacks subject matter jurisdiction, it is generally barred from taking any action that goes to

the merits of the case." *Shortt v. Richlands Mall Assocs., Inc.*, No. 90–2056, 1990 WL 207354, at *4 (4th Cir. Dec.19, 1990).

█ In a Rule 12(b)(1) motion to dismiss, the party invoking the federal court's jurisdiction bears the burden of establishing that the court has jurisdiction. *See, e.g., Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir.2009). A motion to dismiss for want of subject matter jurisdiction will be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See, e.g., In re AE Liquidation, Inc.*, 435 B.R. 894, 900 (Bankr.D.Del.2010).

#### 2. *Subject Matter Jurisdiction*

█ The Defendants argue that the Court lacks jurisdiction over the cause of action because (1) the Court transferred jurisdiction to the Hawaii District Court over claims regarding the PCT's 2003 request for injunctive relief, (2) the Court granted Berry relief from the automatic stay to liquidate his alleged $48 million claim against the Debtors in the Hawaii District Court, and (3) the Court does not have jurisdiction to enjoin the Hawaii Family Court or the Hawaii District Court.

The PCT responds that the Court did not transfer jurisdiction of the Berry related claims, but merely dismissed the PCT's 2003 adversary proceeding without prejudice. In addition, the PCT asserts that lifting the automatic stay to allow the Hawaii District Court to liquidate Berry's claims against the Debtors did not divest this Court of jurisdiction. The PCT notes that the Court specifically retained jurisdiction to consider if the claim was allowable under the Bankruptcy Code, and Barry has continued to participate in the claim process in this Court.

The Court agrees that it did not divest itself of jurisdiction by denying the PCT's 2003 request for an injunction or by granting Berry relief from the stay. The Court merely denied the PCT's request without prejudice, allowing Berry to appear and be heard "on any issue" in the bankruptcy case. (D.I. # 2907 (*citing* 11 U.S.C. § 1109).) In addition, when the Court granted Berry relief from the stay, it specifically retained jurisdiction to determine whether any judgment entered by the Hawaii District Court would be an allowable claim in the bankruptcy case. (D.I. # 9150.)

The PCT also argues that the purpose of the Amended Complaint is not to enjoin the Hawaii Family Court or the Hawaii District Court. According to the PCT, the only parties subject to the requested injunction are the Defendants, and it is limited to a discrete set of issues. If the Defendants can demonstrate to this Court that they have actual evidence to support their claims, they will be free to file and assert such claims before whatever court they choose.

The Court agrees with the PCT that the requested injunction is directed at the Defendants, not the Hawaii Courts. The PCT seeks an order merely requiring that the Defendants first seek permission from this Court before filing any future litigation. Therefore, the Court is not being asked to enjoin another Court.

 The Court must determine, however, whether it has jurisdiction (and to what extent) to issue the requested injunction. Bankruptcy court jurisdiction is divided into "core" and "non-core" proceedings. Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are core proceedings. *In re Combustion Eng'g Inc.*, 391 F.3d 190, 225–26 (3d Cir.2004). Cases under title 11 refers merely to the bankruptcy petition itself. *See, e.g., In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir.1991). Proceedings arising under title 11 refers to the steps within the case and to any sub-action within the case that may raise a disputed legal matter. *See, e.g., In re Wolverine Radio Co.*, 930 F.2d 1132, 1141 n. 14 (6th Cir.1991). Proceedings arising in a case under title 11 refer to proceedings that are not based on any right expressly created by title 11, but nevertheless would have no existence outside the bankruptcy case. *See, e.g., Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3d Cir. 1996). Proceedings that are merely related to a case under title 11, on the other hand, are non-core. *See, e.g., Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 162 (3d Cir.2004).

 The Amended Complaint filed by the PCT was not a step or sub-action within the case. However, the relief requested in the Complaint is an injunction requiring that Berry seek authority to pursue his claims which arise under the bankruptcy case. (Compl. at 1. (limiting the injunction to any filing "(1) that is related to, arises out of, or is connected to (a) this bankruptcy case, (b) the claims Berry asserted in this bankruptcy case, (c) Berry's lawsuits in the Hawaii District Court and the Southern District of New York, or (d) any appeals form any of those matters or any issues raised or asserted in those matters....").) The claims asserted by Berry against the Debtors in this bankruptcy case and the other defendants are all related to the initial licensing agreement with the Debtors (Berry's secured claim) and the sale of the Debtors' assets to C & S approved by this Court (Berry's administrative claim). Determinations regarding the allowance or disallowance of claims

against the estate are core proceedings. 28 U.S.C. § 157(b)(2)(B).

The first case filed in the Hawaii District Court related to Berry's pre-petition claim against the Debtors for their alleged infringement of Berry's interest in FCS. All subsequent litigation brought by Berry was based on Berry's allegation that FCS was sold by the Debtors to C & S pursuant to the Asset Purchase Agreement ("APA") approved by this Court. In both the hearing on the proposed sale and the confirmation hearing in the bankruptcy case, the Court found that FCS was not included in the sale of assets to C & S. (D.I. ## 3120 at 155–58 & 9150 at 159.) The Amended Complaint which seeks an injunction under the All Writs Act is an attempt to enforce this ruling of the Court. Any interpretation of what was sold under the APA and Sale Order is a core proceeding. 28 U.S.C. § 157(b)(2)(M).

Further, the parties subject to the injunction are limited to the PCT, the Debtors, C & S, the Banks, the Reorganized Debtor, the head of the PCT, its individual members, and its financial advisors.[3] All of these parties have indemnification rights against the Debtors. (Compl. at ¶ 142.) Therefore, the Debtors content that an injunction under the All Writs Act is necessary to protect these parties and the administration of the estate. *See* 28 U.S.C. § 157(b)(2)(A) (listing core proceedings to include "matters concerning the administration of the estate").

Based on the aforementioned, the Court finds the Amended Complaint to be a core proceeding arising under this title 11 case.

B. *Rule 12(b)(6) Dismissal*

1. *Standard of review*

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993) ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist."). With the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal,*[5] "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir.2009).

A claim is sufficient if it is facially plausible, that is "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. Determining whether a complaint is "facially plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

---

**3.** (Compl. at ¶ 1 (seeking an injunction for any filing "(2) which seeks the imposition of liability, responsibility, or sanction, whether administrative, civil, professional, or criminal, against the PCT, Fleming Companies, Inc., C & S Wholesale Grocers, Inc., Deutsche Bank Trust Company Americas, JP Morgan Chase Bank, General Electric Capital Corporation, any lender under Fleming's pre-bankruptcy or post-bankruptcy secured credit agreements, Core–Mark International, Inc., Robert Kors,

Castellammare Advisors LLC, the PCT Board or any of its individual members, any affiliates or subsidiaries of the foregoing entities. . . .").)

**4.** 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**5.** —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

the complaint has alleged—but not shown—that the pleader is entitled to relief." *Id.*

After *Iqbal,* the Third Circuit has instructed the courts to "conduct a two part analysis. First the factual and legal elements of a claim should be separated. The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler,* 578 F.3d at 210–11. *See also Iqbal,* 129 S.Ct. at 1949–50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.... When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). "The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim." *Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.),* Bankr.No. 03–12656, Adv. No. 08–50248, 2008 WL 4239120, at *4 (Bankr.D.Del. Sept.16, 2008).

### 2. *Failure to state a claim*

Under the All Writs Act, a plaintiff must plead facts that, if true, would demonstrate that the defendants have engaged in "abusive, groundless and vexatious litigation." *Brow v. Farrelly,* 994 F.2d 1027, 1039 (3d Cir.1993). The Defendants argue that because of their past success in three separate law suits brought by Berry, the imposition of an injunction based solely on their alleged litigiousness is without merit.

The PCT argues that simply because a party has been successful in some aspects of the previous litigation does not preclude a claim under the All Writs Act. *See, e.g., Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986) (granting an injunction although "[a]dmittedly, some of Safir's lawsuits, far from being frivolous, were meritorious. Nevertheless, he has repeatedly asserted the same claims in a slightly altered guise and has used the courts to block and hinder various transactions of the defendants.").

The PCT further asserts that its cause of action goes beyond alleging that Berry is simply litigious. The PCT argues that its Amended Complaint includes assertions that:

(1) Defendants' claims have been patently without merit. (Compl. at ¶¶ 64, 77–82, 84–88, 102–119.)

(2) Defendants have brought repetitive litigation. (Compl. at ¶¶ 69, 91–119, 125–32, 134–40.)

(3) Defendants' litigation has been carried on for an improper purpose and in bad faith. (Compl. at ¶¶ 78, 84, 98, 118, 130–36, 138, 142.)

(4) Defendants' litigation has been brought without any evidentiary basis. (Compl. at ¶¶ 2–12, 67, 82–87, 94, 97, 101–17.)

(5) Defendants have repeatedly attempted to block and hinder the PCT's efforts to conclude these cases. (Compl. at ¶¶ 67–71, 120–32.)

(6) Defendants have failed to comply with court orders, including orders requiring them to pay sanctions. (Compl. at ¶¶ 5, 11, 12 n.4, 89–90, 119, 141.)

(7) Defendants have threatened to continue their vexatious litigation. (Compl. at ¶¶ 6, 125–30.)

The Court finds that the PCT has stated a facially plausible claim. Under the All Writs Act, the Court may issue an injunction to require "litigants who have engaged in abusive, groundless, and vexatious litigation to obtain approval of the court before filing further complaints." *Zahl v. Harper,* No. 10–2021, 2010 WL 4948958, at *6 (3d Cir. Dec. 7, 2010). The

PCT's recitation of the facts highlights numerous legal proceedings filed by the Defendants in at least three separate courts over a period of ten years. Accepting the Complaint's facts as true, the PCT has stated a facially plausible claim.

### C. *Res Judicata*

■ Berry argues that because the District Court in New York already entered a final judgment on allegedly the same relief the PCT is seeking here, the Court must dismiss this cause of action under the doctrine of *res judicata.*

The PCT responds that the actual issue determined by the District Court in New York is different from that raised in this adversary. According to the PCT, the District Court only considered whether a specific complaint filed in that Court by Berry was without any legal or factual basis, whether it was filed for an improper purpose, and whether sanctions were necessary. In deciding that issue, the District Court's review was limited to the complaint itself. Accordingly, the PCT asserts that the District Court did not consider or decide the PCT's current claim under the All Writs Act, which examines all previous litigation. In addition, the PCT notes that the District Court did not consider whether injunctive relief under the All Writs Act was necessary to protect the bankruptcy estate and those participating in the bankruptcy case.

Further, the PCT argues that Berry has continued his vexatious, repetitive, and harassing litigation after the District Court's decision, adding new facts that were not available to that Court. *See. e.g., Jones v. Holvey,* 29 F.3d 828, 830–31 (3d Cir.1994) (finding that *res judicata* only applies where the "acts complained of" and the "material facts alleged" are the same). In support of its argument, the PCT lists numerous events that have taken place

since the District Court's ruling. The alleged additional facts include:

(1) On March 2, 2009, Berry filed an appeal of the District Court's decision to the Second Circuit. (Compl. at ¶ 119.)

(2) On April 6, 2009, the District Court ordered Berry to post a $50,000 appellate bond, which Berry has never paid. (Compl. at ¶¶ 11–12, 118–119.)

(3) On July 9, 2009, Berry (represented by Hogan) filed an objection to the PCT's request to make a final stock distribution to Fleming's unsecured creditors. (Compl. at ¶¶ 122 n.21 & 152.)

(4) Berry (represented by Hogan) filed an unsecured claim in the Bankruptcy Court on July 24, 2009, nearly 6 years after the September 15, 2003, bar date. (Compl. at ¶ 122.)

(5) On August 13, 2009, Berry (represented by Hogan) asked this Court to order the PCT to make a distribution on account of his unsecured claim, but failed to disclose to the Court that Berry's ex-wife was the actual owner of that claim. (Compl. at ¶¶ 122–24.)

(6) On August 13, 2009, Berry (represented by Hogan) requested that this Court award him $2 million for his administrative claim (which had been liquidated in the amount of $57,000 three years earlier in the Hawaii District Court). (Compl. at ¶ 120.) In that motion, Berry once again asserted claims that were already rejected by the District Courts in Hawaii and New York. In particular, Berry argued that Fleming should pay him $2 million based on Fleming's sale of his software to C & S, even though Berry has repeatedly litigated this issue and lost every time. (Compl. at ¶ 120.)

(7) On September 23, 2009, Berry filed a motion to set aside his divorce decree, again making allegations against the PCT, C & S, and other parties, including rehashing his conspiracy theories and RICO claims. (Compl. at ¶ 126.)

(8) On October 8, 2009, Berry filed a motion with the Second Circuit requesting an injunction against C & S pending appeal, notwithstanding the District Court's ruling that any such request was "preposterous." (Compl. at ¶ 127.) In that motion, Berry again asserted that Fleming sold his software to C & S. (*Id.*)

(9) On October 8, 2009, Berry (represented by Hogan) stated that he plans to continue to sue C & S once every three years for its alleged infringement of his software. (Compl. at ¶ 127.)

Unlike the sanction request before the District Court, the PCT argues that the present cause of action seeks to prevent future harm to the bankruptcy estate and its creditors which bear the cost of defending the alleged frivolous litigation. According to the PCT, this is a new issue not raised before the District Court. The Defendants respond that they have not instituted any new litigation since the District Court's ruling, and have simply filed pleadings in already-pending actions.

█ The Court finds that the Amended Complaint is not barred by the doctrine of *res judicata.* A claim is barred under the doctrine of *res judicata* (or claim preclusion) where (1) a prior proceeding resulted in a final judgment on the merits, (2) the prior proceeding involved the same parties or privies, and (3) the prior proceeding was based on the same cause of action as the present matter. *In re Mullarkey,* 536 F.3d 215, 225 (3d Cir.2008).

The request for sanctions in the District Court of New York was based on the complaint filed by Berry in that Court alone, not on his past or possible future litigation. In that request, the PCT argued that Berry's complaint in *that* Court lacked evidentiary support, advanced a meritless legal theory and was filed for an improper purpose. Though it requested a "leave to file" injunction, that injunction was sought as a sanction for Berry's actions in that Court and because monetary penalties would be ineffective.

In contrast, the present Amended Complaint seeking injunctive relief is not based on a request for sanctions nor limited to specific actions in this Court. Rather, it encompasses all aspects of the litigation surrounding the parties, spanning a decade and four separate courts. The All Writs Act permits federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). *See also United States v. Denedo,* — U.S. —, 129 S.Ct. 2213, 2221, 173 L.Ed.2d 1235 (2009). The jurisdiction being "aided" here is that 'of the bankruptcy court and its administration and protection of the bankruptcy estate. The Court agrees with the PCT that this request is unique to this Court and was not considered by the New York District Court. Consequently, the Court finds that the Amended Complaint is not barred by the doctrine of *res judicata.*

### D. *Venue*

The Defendants argue that, in the alternative, the Court should sever and transfer venue of this adversary proceeding to Hawaii. According to the Defendants, venue is proper in Hawaii because (1) the property that the Debtors sold to C & S is located in Hawaii, (2) Berry, Berry's wife, Hogan and witnesses are located in Hawaii, and (3) the Hawaii District Court

retained jurisdiction over the injunction entered in the second case before it.

The PCT argues that an adversary proceeding arising under or related to a bankruptcy case must be commenced in the district where the bankruptcy case is pending. 28 U.S.C. § 1409(a); *see also In re Britt Airways, Inc.*, 169 B.R. 533, 535 (Bankr.D.Del.1994) (finding that aside from two exceptions, "the court in which the bankruptcy case is pending is always a proper venue for proceedings arising under title 11 or arising under or related to a case under title 11.").

The PCT argues that there are only two exceptions to this general rule: (1) claims relating to consumer debts and other small dollar claims which should be raised in the district of the defendant's residence, and (2) claims arising from the operation of a debtor's business post-petition which must be brought in the district dictated by applicable non-bankruptcy venue provisions. 28 U.S.C. § 1409(b) & (d). The PCT asserts that neither exception is applicable here because the cause of action is not based on consumer debts, small dollar claims, or post-petition business operations of the Debtors.

In addition, the PCT asserts that the present cause of action was filed to protect the bankruptcy estate and other creditors and does not deal with rights relating to the property in Hawaii. Further, the PCT argues that through their repeated appearances in this Court, the Defendants have demonstrated that it is not overly burdensome for them to appear here. Finally, the PCT does not anticipate that any witnesses will be necessary to adjudicate the case.

▇▇ The Court disagrees with the PCT's characterization of section 1409 as mandating that the case remain here. Section 1409 provides that "except as otherwise provided ... a proceeding arising under title 11 or arising in or related to a case under title 11 *may* be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a) (emphasis added). This is not a mandatory requirement and is not relevant to determine whether venue (which admittedly is properly here under that section) should be transferred.

▇▇ Rather, section 1412 [6] controls motions to transfer venue of a proceeding under title 11, while section 1404(a) [7] is the general change of venue statute applicable to all civil cases. The analysis under either section is essentially the same, turning on the same issues of "the interest of justice" and "the convenience of the parties," except that section 1412 does not require that the action could have been brought in the transferee district. *See, e.g., In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1390–91 (2d Cir.1990); *Thomson McKinnon Sec., Inc. v. White (In re Thomson McKinnon Sec., Inc.)*, 126 B.R. 833, 834–35 (Bankr.S.D.N.Y.1991). In making a determination on whether to transfer venue, the Third Circuit states that courts should consider numerous factors, including:

(1) plaintiff's choice of forum, (2) defendant's choice of forum preference, (3) whether the claim arose elsewhere, (4) location of books and records and/or the

---

6. Section 1412 provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.

7. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

possibility of viewing the premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets, (10) the public policies of the fora, (11) the familiarity of the judge with the applicable state law, and (12) the local interest in deciding local controversies at home.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir.1995).

■■■ The Court finds that a majority of these factors support venue remaining in Delaware. The parties who would be affected by the injunction are already involved in the bankruptcy case, including the Defendants, the PCT, the PCT Board, Fleming, C & S, and the Banks.

In addition, the underlying events leading to the Amended Complaint have taken place in many states and over a prolonged time period. The Defendants' preferred venue (Hawaii) has itself suggested that it is not a convenient venue. In the third Hawaii case, the District Court suggested venue be transferred and granted the Bank's motion to transfer the case to New York. Because the claims and events are not limited to a particular place of origin and the most recent non-bankruptcy case was transferred away from Hawaii, the Court is not convinced there is a strong enough basis to transfer the case to Hawaii.

The Court also notes that part of the injunction applies to filings connected to the bankruptcy case, including the claims

Berry filed in the bankruptcy case. Because the underlying purpose of the injunction is to protect the bankruptcy estate, practical considerations and local interests support venue remaining in Delaware. Therefore, the Court finds that transfer of venue to Hawaii is not warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the Defendants' Motion to Dismiss or in the Alternative Sever and Transfer Venue should be denied.

An appropriate Order is attached.

### ORDER

**AND NOW,** this **2d** day of **February, 2011,** upon consideration of the Defendants' Motion to Dismiss or in the Alternative Sever and Transfer Venue, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Defendants' Motion is **DENIED;** and it is further

**ORDERED** that any Response to the PCT's Motion for Summary Judgement shall be filed within 30 days of this Order.