**BOSTON POST ROAD MEDICAL IMAGING, P.C., etc., et ano.,**
Plaintiffs,

v.

**ALLSTATE INSURANCE COMPANY,**
Defendant.

**No. 03 Civ. 6153(LAK).**

United States District Court,
S.D. New York.

May 3, 2004.

Moshe D. Fuld, Moshe D. Fuld, P.C., New York City, for Plaintiffs.

Peter C. Merani, New York City, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This motion presents the unedifying spectacle of a major insurance company seeking to vacate a default judgment because, it claims, it was too confused to file an answer or even to seek an extension of time. The excuse is incredible. The heavy preference for resolution of cases on the merits is insufficient to overcome such egregious behavior.

### Facts

Plaintiff Boston Post Road Medical Imaging, P.C. ("BPRMI"), brought this diversity action against Allstate Insurance Company ("Allstate") as alleged assignee of the rights of a number of its patients. It sought to recover $102,154.99 for medical services rendered to its assignors which Allstate allegedly was obliged to pay under the "no-fault benefit" clauses in policies of automobile insurance allegedly issued by it to the assignors. In a separate count, the professional corporation employing its attorney, Moshe D. Fuld, P.C., sought to recover legal fees under

unspecified provisions of the New York Insurance Law and regulations.

This action was commenced on August 14, 2003, and the summons and complaint were served on September 2, 2003. Allstate failed to answer or appear. A Rule 55(a) default, as distinguished from a default judgment, was entered on November 19, 2003.

On December 4, 2003. Allstate's counsel wrote to the Court, albeit without any indication that a copy of the letter had been sent to his adversary. The letter advised that Allstate's time to answer had expired and sought a two week extension of time which, it noted, had been refused by plaintiff's counsel. In view of the *ex parte* nature of the communication, the Court denied the application "without prejudice to motion on notice" by order endorsed the same day. Nevertheless, Allstate made no such motion. A default judgment was entered on January 14, 2004 and the case closed.

On February 17, 2004, Allstate moved to vacate the judgment, to dismiss the action for lack of subject matter jurisdiction, and for other relief. Its principal contention is that BPRMI can satisfy the minimum jurisdictional amount only by aggregating the individual claims of its assignors and that this is improper under Section 1359 of the Judicial Code,[1] which forecloses jurisdiction in cases in which a party improperly or collusively makes or joins in an assignment to invoke the jurisdiction of a district court.

### Discussion

#### Is the Judgment Void?

The core of Allstate's initial position, although it is not so stated, appears to be a simple syllogism. Rule 60(b)(4) permits a district court to vacate a judgment on the ground that it is void. As BPRMI joined in the assignments of its patients' claims for the purpose of invoking the jurisdiction of this Court, Section 1359 excludes this case from the diversity jurisdiction conferred by Congress. A judgment rendered in the absence of jurisdiction is void. *Ergo,* the Court should vacate the default judgment without consideration of the other factors usually consid-

---

1. 28 U.S.C. § 1359.

ered on such motions. The matter, however, is not quite that clear.

The complaint is silent concerning the circumstances of or the reasons for the assignments. While Allstate asserts that the assignments were made solely or primarily for the purpose of invoking the jurisdiction of this Court, its papers are devoid of any such evidence. And while the burden of persuading a district court that an assignment by which the plaintiff derives title to its claim was neither improper nor collusive rests on the plaintiff,[2] logic suggests the defendant has the initial burden of raising the question whether the assignments were improper or collusive.[3]

■ "[A] federal district court's erroneous exercise of subject matter jurisdiction is not subject to collateral attack."[4] Where a party "has had an opportunity to litigate the question of subject matter jurisdiction,"[5] it may not reopen that issue in a collateral attack in the absence of "a clear usurpation of power by a district court," as distinguished from an error of law in determining the existence of jurisdiction.[6]

■ In this case, the complaint on its face alleged complete diversity of citizenship and, by virtue of the assignments, the presence of the requisite amount in controversy. Nothing in that pleading demonstrated that the assignments were improper or collusive. Allstate had the burden of going forward on that issue if it wished to do so, but it defaulted. Under the normal rules of claim preclusion, the default judgment barred all defenses that it might have raised, including the contention that jurisdiction was lacking because the assignments were collusive.[7] In consequence, it would be inappropriate to vacate the judgment under Rule 60(b)(4). But that is not the end of the matter.

### Relief from the Judgment

Allstate explains its failure to answer on time as follows:

"Defendant did not interpose an answer in this lawsuit due to confusion on their part. Plaintiff and plaintiff's counsel has [*sic*] started numerous lawsuits in federal court against this defendant. Defendant is having a difficult time determining what these lawsuits are and what claims they involve. As you can see from the caption of the case, the plaintiff is suing on numerous insurance contracts as an assignee. However none of those named contracts are listed in the caption except for one. Allstate has been sued numerous times and is having a difficult time correlating the papers to actual claims. Plaintiff has started numerous other lawsuits against the defendant involving hundreds of individual no-fault claims listing the assignors in riders to the complaints under docket number 03 CV 6154, 03 CV 6150 and 03 CV 3923 that the defendant is aware of. Allstate Insurance Company maintains multiple offices which handle no-fault claims depending were [*sic*] the insurance contract and or [*sic*] accident occurs [*sic*]. Plaintiff is randomly bunching claims together and is suing Allstate Insurance Company. By the time Allstate Insurance Company coordinates and figure [*sic*] out what the lawsuit is about, the time to answer expires."[8]

Rule 60(b)(1) permits a court to vacate a judgment on the ground, *inter alia*, of excusable neglect. The factors pertinent to a de-

2. *See, e.g., Airlines Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857, 863 (2d Cir.1995); *Dweck v. Japan CBM Corp.*, 877 F.2d 790, 792 (9th Cir.1989); *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 n. 2 (2d Cir. 1976); *Bradbury v. Dennis*, 310 F.2d 73, 74 (10th Cir.1962).

3. *See, e.g., Airlines Reporting Corp. v. S and N Travel, Inc.*, 857 F.Supp. 1043, 1048 (E.D.N.Y. 1994), *aff'd*, 58 F.3d 857 (2d Cir.1995).

4. *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986) (citing *Chicot County Drainage Dist. v.*

*Baxter State Bank.*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940)).

5. *Id.* (quoting *Insurance Corp. v. Campagnie des Bauxites*, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)).

6. *Id.*

7. *Id.* at 64–65; *see* RESTATEMENT (SECOND) OF JUDGMENTS § 18(2) (1982).

8. Leib Aff. p. 5.

termination whether to grant relief from a default judgment include "the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted." [9]

### 1. Willfulness

■■■■ "The subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not." [10] A finding of willfulness, however, does not require bad faith.[11] Rather, " 'willfulness,' in the context of a default, ... refer[s] to conduct that is more than merely negligent or careless." [12] It may be found "where the conduct of counsel or the litigant was egregious and not satisfactorily explained." [13]

■■■■ Allstate's position here is about as lame as can be imagined. It was served with a summons and complaint, each of which bore the docket number. That docket number is different than the docket number in any other action. Even assuming that it was burdensome and time consuming for Allstate to figure out which particular contracts were at issue in which particular action—an unduly favorable assumption given that the particular contracts that are the subject of each case are listed in a rider to each complaint—it was perfectly obvious from the moment that Allstate was served that it was obliged to submit an answer or motion within the requisite period or obtain an extension of time.[14] Indeed, when it finally engaged outside counsel in late November or early December 2003—by which time it already had

been in default for more than two months—counsel immediately so recognized. Moreover, we are not dealing here with the owner of a "Mom and Pop" neighborhood business. The Westlaw database reveals that Allstate was a party in federal and state cases that have produced 1,689 and 7,607 reported decisions, respectively, since 1944. It is probably among the most frequent litigants in the United States. The idea that this defendant was too confused to submit an answer or seek an extension of time is preposterous. Its failure to do so was so much more egregious than mere negligence or carelessness that it was, for present purposes, willful.

### 2. Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage. 'A defense is meritorious if it is good at law so as to give the factfinder some determination to make.' " [15]

Allstate seeks to satisfy this undemanding standard by an affidavit of counsel which makes most conclusory assertions with respect to many, but not all, of the assigned claims. But it is unnecessary to determine whether it is sufficient, as the requirement of a showing of a meritorious defense has been satisfied here by Allstate's invocation of Section 1359.

Plaintiff here took assignments of 44 separate claims, each far short of the jurisdictional amount, which it aggregates to satisfy the requisite jurisdictional amount. In the absence of any explanation other than an attempt to get into federal court,[16] this affords

9. *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 171 (2d Cir.2001).

10. *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir.1996).

11. *Gucci America, Inc. v. Gold Center Jewelry*, 158 F.3d 631, 634–35 (2d Cir.1998), *cert. denied*, 525 U.S. 1106, 119 S.Ct. 873, 142 L.Ed.2d 774 (1999).

12. *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).

13. *Id.*

14. One can only imagine what Allstate might say to a policyholder whose coverage was cancelled

for nonpayment of premium and who nevertheless sought coverage for a subsequent accident, giving the excuse that the policyholder got so many bills that the time within which to pay the premium had expired by the time it figured out which creditors it had to pay.

15. *American Alliance Ins. Co.*, 92 F.3d at 61 (quoting *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir.1988)).

16. Plaintiff's memorandum argues, without benefit of any affidavit or other evidence, that the assignments were made to permit plaintiff's patients to obtain services without making out of pocket payments and to shift to plaintiff the

a basis for Allstate's contention that the Court lacks subject matter jurisdiction sufficient to warrant exploration.[17] As lack of subject matter jurisdiction would be a complete defense to the action, Allstate has shown the existence of a meritorious defense in the very limited sense of that term employed on motions to vacate default judgments.

### 3. Prejudice

The Court can see no prejudice that would accrue to the plaintiff by virtue of vacatur of the default judgment. If plaintiff's claims are valid, it will prevail.

### Conclusion

As our circuit repeatedly has said, there is a strong preference for resolution of lawsuits on the merits.[18] Allstate's "presentation of a meritorious defense and the lack of prejudice to American weigh heavily in" its favor.[19] The unique circumstances of this case, however, make it unnecessary to determine whether its willful failure to file a timely answer alone would disable it from obtaining relief. For there is more here.

Allstate did not merely default willfully. While its outside counsel, upon learning of the default, immediately sought relief from the Court, he inexplicably did nothing for another two and a half months after his application was denied—denied because it had been made *ex parte*.[20] Taking into account the egregiousness of the default and this lackadaisical approach, the motion to vacate the default judgment and for other relief is denied.

SO ORDERED.

---

burden of applying for insurance benefits. Perhaps so. But neither Allstate nor the Court is bound to accept the unsubstantiated assertions of counsel.

**17.** In fact, courts in this district have reached opposite conclusions in similar cases involving Allstate on whether subject matter jurisdiction exists. *Compare Boston Post Road Medical Imaging, P.C. v. Allstate Ins. Co.*, No. 03 Civ. 6150 (SAS), 2004 WL 830154 (S.D.N.Y. April 13, 2004) (denying motion to dismiss for lack of subject matter jurisdiction, finding that, *inter alia*, the assignments were not made improperly or collusively as defined by Section 1359 and aggregation of the assigned claims was permissi-

ble), *with Preferred Medical Imaging, P.C. v. Allstate Ins. Co.*, 303 F.Supp.2d 476 (S.D.N.Y.2004) (dismissing action for lack of subject matter jurisdiction).

**18.** *American Alliance Ins. Co.*, 92 F.3d at 62.

**19.** *See id.* at 62.

**20.** FED. R. CIV. P. 6(b) permits an *ex parte* application for an extension of time when the application is "made before the expiration of the period originally prescribed" but requires a motion on notice where the application is made thereafter.